UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


IN THE MATTER OF THE COMPLAINT
OF AMERICAN BOAT COMPANY LLC
AND STRAIT MARITIME GROUP LLC,              CIVIL ACTION
AS OWNERS, AND WESTERN RIVERS
BOAT MANAGEMENT, INC., AS                   16-506-SDD-RLB
OPERATOR AND OWNER *PRO HAC
VICE*, OF THE M/V DANNY ETHERIDGE,
FOR EXONERATION FROM OR
LIMITATION OF LIABILITY


## RULING

Before the Court is a *Motion in Limine*[1] to Exclude or Limit the anticipated testimony of the plaintiff's liability expert, John Pierce filed by American Boat Company LLC, et. al[2] (hereafter the "Limitation Petitioner or "WRBM"). Claimant, Kathryn Hammes-Ciraolo has filed an *Opposition*.[3]

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2016, Patrick Titus was killed during the course of his employment as a crewmember aboard the M/V DANNY ETHERIDGE.[4] The incident occurred on the Mississippi River near Port Allen, Louisiana, at a facility owned by Bear Industries.[5] Titus was a Jones Act seaman employed by Western Rivers Boat Management Inc.

---

[1] Rec. Doc. 55.
[2] Limitation Parties are: American Boat Company LLC, and Strait Maritime Group LLC, as owners, and Western Rivers Boat Management, Inc. as operator, owner and/or owner *pro hac vice* of the M/V DANNY ETHERIDGE.
[3] Rec. Doc. 73.
[4] *See* Note 2, *supra*.
[5] Bear Industries is a Claimant in this Limitation Action.

("WRBM").[6] Claimant, Kathryn Hammes-Ciraolo is the mother of Patrick Titus and the representative of his estate.

Claimant's liability expert, John Pierce, opines in part "that WRBM's owners, managers, captain, and mate failed in their duty to conduct a safe barge-mooring operation."[7] WRBM moves to exclude or alternatively to limit Pierce's opinions under Rule 702 of the Federal Rules of Evidence arguing that Pierce's opinions are inherently unreliable because they are based on incomplete or erroneous information.[8] WRBM further argues that Pierce impermissibly relies on OSHA safety standards as providing the applicable standard of care.

## II. LAW AND ANALYSIS

### A. Sufficiency of the Data Underlying Pierce's Opinions

Among the conditions imposed by the Federal Rules of Evidence on the admissibility of expert opinion testimony is that the testimony be "based on sufficient facts or data."[9] Under the *Daubert* framework, "Rule 702 assigns to the district judge a gatekeeping role to ensure that [opinion] testimony is both reliable and relevant."[10] "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion."[11] Expert opinion that relies on

---

[6] Rec. Doc. 102.
[7] Rec. Doc. 73-2.
[8] Rec. Doc. 55-1.
[9] Federal Rules of Evidence, Rule 702 provides:
  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:
     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
[10] *Moore v. Int'l Paint, L.L.C.,* 547 F. App'x 513, 515 (5th Cir. 2013).
[11] *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 354 (5th Cir. 2007).

false assumptions rebutted by undisputed record evidence is unreliable.[12] Initially, WRBM argued that Pierce's factual underpinnings were incomplete for failure to consider evidence which came to light after Pierce's *Preliminary Report*. This argument was subsequently withdrawn.[13] Hence, the Court confines its analysis to whether Pierce's opinions are "based on sufficient facts or data."[14]

WRBM argues that Pierce's opinions must be excluded as unreliable because Pierce relies on "incorrect factual statements and assumptions."[15] First, WRBM points out that Pierce's conclusions are unreliable as demonstrated by the fact that "Pierce identifies the wrong person as captain of the vessel."[16] Indeed, Pierce's *Preliminary Report*[17] identifies Charles Nelson as the vessel Captain at the time of the subject accident when, in fact, the vessel was captained by Brent St. Amant. The misnomer was corrected in Pierce's *Supplemental Report*.[18] While the misnaming of the vessel Captain may be sloppy, it does not in this Court's view, mandate exclusion on the grounds of unreliability.

WRBM argues that Pierce's opinion that WRBM failed to conduct a pre-task safety meeting that included an adequate risk assessment of the mooring activity involved in this accident is unreliable. According to WRBM, "the testimony and documentary evidence in the record confirms that Western Rivers did perform routine safety meetings and risk

---

[12] *Moore*, 547 F. App'x at 515.
[13] Rec. Doc. 91.
[14] FRE 702 (b).
[15] Rec. Doc. 55-1.
[16] *Id.* at 6.
[17] Rec. Doc. 73-2, dated July 13, 2017.
[18] Rec. Doc. 73-3, dated October 24, 2017, clarifies that "Brent St. Amant, rather than Capt. Charles Nelson (who refused to give a statement) was on watch in the pilothouse at the time of the incident. Therefore, the shiphandling and other faults attributed to Capt. Nelson just prior to and during the incident noted in my *Preliminary Report* are instead attributable to Capt. St. Amant, while Captain Nelson continues to share the responsibility with regard to risk assessment and establishing and enforcing a proper safety culture."

assessments."[19] Claimant counters that there is no record evidence that safety meeting(s) addressed the specific mooring hazard encountered by Titus.[20] Claimant points to the testimony of WRBM employee Casey Clouse who could not recall any specific warnings to the crew about the barge possibly sliding under the rake.[21] There is a dispute of fact as to the nature and scope of warnings made and the subject matter covered in pre-accident safety meetings. This conflict of underlying fact does not render the opinions unreliable. Vigorous cross examination will enable the trier of fact to determine the credibility to afford the challenged opinions.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration."[22] The Court's gatekeeping function is not meant to supplant the adversary system. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[23]

WRBM further argues that Pierce's conclusions and opinions are unreliable because he was "confused" about the sequence of events which culminated in the accident. According to WRBM, Pierce "blatantly speculates" that Titus was directed by mate Kendrick to turn around and walk towards the bow, and while doing so stepped fatally into the pinch point. On this point of fact, the testimony is conflicting.[24] Again this

---

[19] Rec. Doc. 55-1, citing Brent St. Amant Deposition, Exh. 2, pp. 23-26; Patrick Kendrick Deposition, Exh. 3, pp. 53-60, 67, 96-97, 104, 110-113.
[20] Rec. Doc. 73
[21] *Id.*
[22] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996)(citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).
[23] *Daubert v. Mrrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993).
[24] WRBM cites the deposition testimony of Michael Devillier, Rec. Doc. 55-5, pp. 52-55. Plaintiffs cite to Devellier's testimony at pp. 85, 86, 91, and 93.

is best left for cross examination. As in any case, the jury will be instructed that they "are not required to accept [opinion testimony]. As with any other witness, it is up to you to decide whether to rely on it."[25]

WRBM maintains that Pierce's assumption that Captain St. Amant drove the vessel under the rake is unsupported. In support of this argument, WRBM cites to the testimony of a Michael Devillier, a Bear employee who was working on the dock when the accident happened, who testified that he *did not know* if the vessel was moving "under power by the tug" or some other force (such as current).[26] WRBM also cites to the testimony of Captain St. Amant that the tug was "out of gear" prior to the accident.[27] WRBM submits that there is no record evidence to the contrary on this point. However, Claimant directs the Court to the deposition of Colby Moore, another employee who was on the dock at the time, who testified that the vessel was "moving forward."[28] While there may be no definitive evidence that the vessel's movement immediately prior to the accident was due to tug power, current, or some combination, this dispute of fact does not render Pierce's opinion unreliable *per se*. Again, the jury can decide whether or not to rely on the opinion. The reasonableness of the assumption that the vessel movement was due to tug power goes to the weight and not the admissibility of the opinion. The jury

---

[25] Fifth Circuit Pattern Jury Instructions, 3.5.
[26] Rec. Doc. 55-5, pp. 41-42.
[27] St. Amant Deposition, Rec. Doc. 55-2, pp 53-54, 65.
[28] Deposition of Colby Moore, Rec. Doc. 73-6, pp 119 -120.
    Q: What I want to understand first is do you specifically recall that it was moving in any direction when you lowered it to the crew?
    A: I believe it was still moving forward, yes.
    Q: At any point after you delivered that line, did you detect any change in the motion of the barge? And that's from you deliver it, you look at Mike and then you start heading aft, did you detect any change in the motion?
    A: No. No change.
    Q: And it didn't change or you didn't detect it?
    A: I didn't detect any change. It was still moving forward.

is free to accept or utterly reject the opinion. Federal Rule of Evidence 702 is not a substitute for robust cross examination. The Court finds that in this case, where the expert's qualifications are not at issue, and where the material underlying facts are contested, the adversarial process will lay bare the issues for careful deliberation and determinations by the triers of fact (jury).

### B. Reliance on OSHA Regulations

WRBM moves the Court to limit or exclude opinion testimony that relies on OSHA regulations. WRBM submits that "OSHA regulations do not apply and any reference thereto should be prohibited".[29] In his *Preliminary Report*, Pierce references OSHA's General Duty Clause:

> Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

WRBM advances three arguments for exclusion of any references to OSHA general duty language. "First, the standard of care in a Jones Act case may not be determined by inapplicable OSHA regulations."[30] Second, WRBM maintains that the OSHA General Duty Clause "expresses notions of general common sense safety in providing workers with a safe place to work"[31] and is thus unhelpful to the trier of fact. Finally, WRBM argues that, to the extent the regulations speak to an employer's duty to provide a safe place to work, this is an expression of a legal duty, and thus a matter for the Court and not an expert witness.

---

[29] Rec. Doc. 55-1.
[30] *Id.* (citing *In Re M&M Wireline & Offshore Servs., LLC*, No. 15-5338, 2017 WL 480603, at *8 (E.D. La. Feb. 3, 2017)), (citing *Vallot v. Cent. Gulf Lines, Inc.,* 641 F.2d 347, 351 (5th Cir. 1981)).
[31] *Id.*

45309 6

Claimant counters that OSHA regulations apply to uninspected vessels in state waters as evidenced by the fact that WRBM was issued an OSHA citation.³² Claimant also offers citation to cases from several circuits that permit an expert's reliance on OSHA regulations in marine safety cases.³³

OSHA regulations may apply to uninspected vessels such as the one in this case. In *Chao v. Mallard Bay Drilling, Inc.*,³⁴ the Supreme Court found that the general marine safety regulations issued by the United States Coast Guard did not preempt OSHA's jurisdiction over working conditions on an uninspected vessel where Coast Guard regulations did not address the occupational safety and health risks specifically posed.³⁵

The cases relied upon by WRBM are inapposite. In each of those cases, the liability expert proposed to rely on specific OSHA regulations that were by their terms *inapplicable* in the context of the facts of the case. In *In Re M&M Wireline & Offshore Servs., LLC,* the claimant's liability expert proposed to rely on an OSHA regulation that applied only to construction practices.³⁶ The Court found that a construction specific regulation, without evidence that construction practices were at issue, was inapplicable and therefore irrelevant.

In *Vallot v. Central Gulf Lines, Inc.*, the Court held that OSHA regulations offered to link certain chemicals to [the seaman's] disease . . . do not apply to cases such as this

---

³² Rec. Doc. 73, 73-7 (citing *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235 (2002)).
³³ Rec. Doc. 73, p. 12.
³⁴ 534 U.S. 235 (2002).
³⁵ *Lee v. Central Gulf Towing, L.L.C.*, No. 04-1497, 2005 WL 6773727, at *4–5 (E.D. La. Aug. 1, 2005) (citing *Chao*, 534 U.S. at 235).
³⁶ OSHA regulation 29 C.F.R. § 1926.605(b)(2), listed under Part 1926's "Safety and Health Regulations for Construction". Pursuant to 29 C.F.R. § 1910.12(a), the standards in Part 1926 only apply "to every employment and place of employment of every employee engaged in construction work."⁹³

one governed by Coast Guard jurisdiction.[37]

Under the Jones Act, a seaman is entitled to recovery if his employer's negligence is the cause, in whole or in part, of the seaman's injury.[38] An employer must adhere to the standard of care of "ordinary prudence under the circumstances."[39] Thus, an employer "has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition."[40] The seaman is likewise obligated to act with ordinary prudence under the circumstances.[41]

While the standard of care in a Jones Act case may not be determined by *inapplicable* OSHA regulations,[42] the Court does not find that the OSHA General Duty Clause is an inapplicable regulation. This case involves an uninspected vessel, hence, the general marine safety regulations issued by the United States Coast Guard are not preemptive. In this case, the Claimant's expert does not propose to rely on OSHA regulations which are by their terms are *inapplicable* to the facts. Pierce admits the cited regulations are in the nature of a "general duty" and that "there are no specific OSHA standards or U.S. Coast Guard regulations" that apply. Furthermore, Claimant concedes that OSHA's general duty regulation may not be advanced as negligence *per se*, but that "such a violation 'could be admitted as evidence of negligence."[43]

---

[37] 641 F.2d 347, 349 (5th Cir. 1981) (citing 29 C.F.R. 1918.1(b) (1981)) (In *Vallot* the vessel at issue was an American flag vessel certified by the American Bureau of Shipping and the United States Coast Guard for carrying bulk cargo).
[38] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).
[39] *Lett v. Omega Protein, Inc.*, 487 Fed. App'x. 839, 843 (5th Cir. 2012) (citing *Gautreaux*, 107 F.3d at 338).
[40] *Lett,* 487 F. App'x at 843.
[41] *Gautreaux*, 107 F.3d at 339.
[42] *M&M Wireline*, 2017 WL 480603, at *8.
[43] Rec. Doc. 73 (citing *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1164 (3rd Cir. 1992)) (citations omitted).

## III. CONCLUSION

The Court finds that OSHA's General Duty Clause which requires that an employer furnish "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" may provide evidence of the standard of care of "ordinary prudence under the circumstances."

For the foregoing reasons, WRBM's *Motion in Limine*[44] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on April 25, 2018.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[44] Rec. Doc. 55.